**DIVISION OF CHILD SUPPORT ENFORCEMENT, Petitioner Below, Appellant,**

v.

**Francis W. SMALLWOOD, Respondent Below, Appellee.**

Supreme Court of Delaware.

Submitted: April 28, 1987.
Decided: June 24, 1987.

Kevin R. Slattery, Deputy Atty. Gen., Division of Child Support Enforcement, New Castle, for appellant.

Douglas A. Shachtman, Douglas A. Shachtman & Associates, Wilmington, for appellee.

Before CHRISTIE, C.J., HORSEY and WALSH, JJ.

WALSH, Justice:

This appeal from the Family Court presents the question of whether the Family Court is authorized to impose counsel fees upon a State agency, the Division of Child Support Enforcement (the "Division"), which was found to have used defective procedures in pursuing a civil nonsupport action against the father of children supported by public funds. The Family Court concluded, in the exercise of its "equitable power," that the Division should bear the father's counsel fees. We conclude that the Court lacks such equitable authority and accordingly reverse.

I

Although this case has an extensive procedural history, having been the subject of an appeal on the merits to the Superior Court and an attempted interlocutory appeal to this Court, the issue now before this Court rests upon a narrow factual base. The respondent father signed an agreement in 1978 to reimburse the Division for public assistance benefits which the State had provided his children during the period the father was unable or unwilling to provide child support. The agreement was filed in the Family Court as a proposed order and later approved by a Family Court judge, without notice to the father. This *ex parte* proceeding conformed to a practice apparently agreed to by the Division and the Family Court. In 1982, when the father became delinquent in his required periodic payments, the Division attempted to enforce the support order through contempt proceedings and a wage attachment. The father responded to the petition by attacking the jurisdictional basis for the entry of the 1978 Family Court order of payment. The Family Court denied the father relief and entered a judgment of $2,760 against him. On appeal to the Superior Court, the order was vacated on the ground that the Family Court had not effectively secured jurisdiction over the person of the father at the time of the entry of the 1978 order. Upon reversal the father petitioned the Family Court for an award of counsel fees.

In an unreported opinion, the Family Court determined that under the jurisdiction it "inherited" from Chancery Court it had authority to award counsel fees to either party to a support action "under proper circumstances." While it concluded that there was no evidence of fraud or overreaching on the part of the Division, its use of an *ex parte* procedure, with the tacit consent of the Family Court, was such misconduct as required it as the losing party to defray the father's counsel fees.

The Division mounts a broad-ranging attack upon the Family Court's order. Initially it contends that, as a matter of law, its pursuit of support repayments was the discharge of a governmental function and, accordingly, was protected against the assessment of counsel fees by reason of sovereign immunity. It next argues that, its governmental status apart, the Family Court lacks jurisdiction to award counsel fees to a respondent in a support action. Finally, it contends that it was an abuse of discretion to award counsel fees under the admitted circumstances of this case.

II

The Division's claim to sovereign immunity is based on the contention that it discharges a governmental function in pursuing support on behalf of applicants for Aid for Families with Dependent Children ("AFDC"). It thus seeks to avoid the waiver of sovereign immunity which generally results when a state voluntarily becomes a litigant and thus subjects itself to the same liability for costs as attaches to any private litigant. *See* 20 Am.Jur.2d, *Costs* § 32 (1965); Annotation, *Liability of State, or Its Agency or Board, for Costs in Civil Action to Which it is a Party,* 72 A.L.R.2d 1379, 1393 (1960).

The defense of sovereign immunity is reluctantly recognized when asserted to bar claims against agents of the State which, if committed by private citizens, would constitute actionable wrongs. *Pajewski v. Perry,* Del.Supr., 363 A.2d 429, 433 (1976). It is ill-favored simply because of its inherent unfairness when raised to limit application of rules to only one party

to a controversy. The requirement of mutuality of obligation is the basis for finding a waiver of sovereign immunity whenever the State enters into a contractual relationship which may require judicial enforcement. *George & Lynch, Inc. v. State*, Del. Supr., 197 A.2d 734, 736 (1964).

■ Here the Division's claim against Smallwood for reimbursement of child support stemmed from a contract—the November 14, 1978, agreement. As the Family Court determined, Smallwood made payments substantially in compliance with that agreement through mid–1979, when he was discharged from his employment because of an injury. The terms of that agreement provided for weekly payments by Smallwood to the Bureau [Division] of Child Support Enforcement and not to the mother of the children. In a real sense, the contracting parties were the State, acting through the Division, and Smallwood. Clearly the Division viewed its underlying relationship with Smallwood as a contractual one. Indeed, in seeking enforcement of the agreement, which had become the subject of a consent order, the Division argued, unsuccessfully, in the Superior Court that jurisdiction over Smallwood resulted from the execution of the agreement, even in the absence of personal service.

The assertion of sovereign immunity in this case is at variance with the requirement that there be mutuality of obligation and remedy between contracting parties. *Id.* As a party litigant seeking to enforce contractual rights, the State, acting through the Division, is subject to the imposition of all costs and assessments which would attach to the effort of a private litigant seeking enforcement of a contract. We thus agree with the Family Court that the State may not rely upon the defense of sovereign immunity to avoid the assessment of costs in this case.

### III

The Division acknowledges that the equitable concept of cost assessment is broad enough to include counsel fees, and this Court has so held with respect to the authority of the Court of Chancery. *Wilmington Medical Center v. Severns*, Del. Supr., 433 A.2d 1047, 1049–1050 (1981). It argues, however, that the power of the Family Court to assess counsel fees in child support cases is specifically limited by 13 *Del.C.* § 513(a)(5)[1] to those incurred by a petitioner.

The Family Court's analysis ignored the specific limits of section 513(a)(5) in favor of a general statement of its equitable power. The Family Court noted that the restrictive language of section 513(a)(5) warranted consideration, but relied upon its "inherited" equitable jurisdiction as the basis for its fee award. In so concluding the Family Court engaged in an overly expansive view of its authority.

In support of its conclusion that it possessed such equitable jurisdiction, the Family Court considered Family Court Rule 430(d), which provided, "In any case where there is a legal or equitable basis therefore, the Court may assess against a party the reasonable counsel fees of any other party."[2] The Court also found support for its ruling in the following statutes concerning the jurisdiction of Family Court: 13 *Del.C.* § 507(a), which grants the Family Court "all other jurisdiction and powers relating to support and separate maintenance actions heretofore possessed by the Chancellor or the Court of Chancery of the State"; 13 *Del.C.* § 513(a)(7), which empowers the Family Court to enter orders "the Court of Chancery heretofore possessed the power to enter, and as the interests of the parties may require"; 10 *Del.C.* § 925(10), which

1. 13 *Del.C.* § 513(a)(5) provides:
 (a) Where the duty of support has been determined to exist, the Court may:
 \* \* \* \* \*
 (5) Order the defendant to pay the expenses of litigation including reasonable counsel fees incurred by a petitioner; provided, however, that in all proceedings relating to a violation of an order of support for a spouse or child in

which the petitioner is a prevailing party, the Court shall order the defendant to pay the expenses of litigation, including reasonable counsel fees incurred by a petitioner;

2. Family Court Rules have since been revised. Former Rule 430(d) has been incorporated into present Family Court Civil Rule 88.

empowers the Family Court generally to "assess fees, costs, and fines; or remit them in proper cases"; and finally, 10 *Del.C.* § 925(15), which states that "In any civil action where jurisdiction is otherwise conferred upon the Family Court, it may enter such orders against any party to the action as the principles of equity appear to require."

 None of these provisions explicitly authorize the Family Court to assess, on grounds of equity, counsel fees in favor of support obligors against petitioners seeking child support. Moreover, the general jurisdictional provisions upon which the Family Court relied all predate the most recent counsel fee amendment to section 513, which resulted in that section in its present form. *See* 64 *Del.Laws C.* 139. Where the evolution of a statute is strongly suggestive of the legislative intent, it cannot be ignored. *Giuricich v. Emtrol Corp.*, Del.Supr., 449 A.2d 232, 238 (1982). Thus, if the issue is viewed as one of legislative intent, the specific, and more recent, statutory limitation on the award of counsel fees reflected in section 513(a)(5) would govern. *Blue Cross & Blue Shield of Del. v. Elliott*, Del.Supr., 449 A.2d 267, 270 (1982); *Hamilton v. State*, Del.Supr., 285 A.2d 807, 809 (1971).

 Even if the Family Court's statutory authority to award counsel fees under the facts of this case is deemed ambiguous, thus permitting recourse to that court's inherited Chancery jurisdiction, the result below is not sustainable. The award of counsel fees in favor of a defendant at the expense of an unsuccessful plaintiff, not chargeable with fraud or bad faith, finds no support in decisions of the Court of Chancery.

In equity, the grant or denial of counsel fees lies within the sound discretion of the Court. *CM & M Group, Inc. v. Carroll*, Del.Supr., 453 A.2d 788, 795 (1982). However, the general rule is that "apart from statute or contract, a litigant must pay his counsel fees." *Maurer v. International*

*Re-Insurance Corp.*, Del.Supr., 33 Del.Ch. 456, 95 A.2d 827, 830 (1953). This rule is subject to a number of nonexclusive but narrow exceptions. *Id.* at 830–831; *CM & M*, 453 A.2d at 795; *Walsh v. Hotel Corporation of America*, Del.Supr., 231 A.2d 458, 462 (1967). Apart from certain dicta appearing in *Loretto Literary, Etc. v. Blue Diamond Coal*, Del.Ch., 444 A.2d 256, 260 (1982),[3] no decision from the Court of Chancery supports the appellee's contention that mere differences in resources or the prolonging of litigation may form the basis for an award of counsel fees to a defendant.

In *Hutchinson v. Fish Engineering Corporation*, 42 Del.Ch. 116, 204 A.2d 752 (1965), *aff'd*, Del.Supr., 42 Del.Ch. 435, 213 A.2d 447 (1965), a request to impose counsel fees against an unsuccessful plaintiff was rejected as not supportable in the absence of fraudulent conduct. In *Hutchinson* Chancellor Seitz wrote:

> Defendants were successful on the merits.... Defendant Fish Engineering seeks to have the unsuccessful plaintiff pay its counsel fees. Assuming that the allowance of counsel fees to the successful party is a permissible discretionary matter with a court of equity, I conclude that the facts of this case do not move me to allow them to defendant Fish Engineering. First, in this type of case the granting of an allowance would be most unusual.... Moreover, it would require a finding that the filing of the action was fraudulent, utterly frivolous or the like. I am unable to so find here. Counsel fees will not be assessed.

204 A.2d at 753 (citations omitted).

Other Delaware decisions also indicate that an "equity" exception to the general rule that litigants must pay their own counsel fees requires bad faith or its equivalent. *See Slawik v. State*, Del.Supr., 480 A.2d 636, 639 n. 5 (1984) (Delaware courts have inherent power to allow attorneys' fees for willful disobedience of a court order, or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppres-

**3.** In *Loretto,* the court assessed counsel fees as costs in favor of a successful plaintiff and against a corporate defendant which refused to register the transfer of stock despite the lack of "a legitimate ground supported by some credible evidence." 444 A.2d at 261.

sive reasons.); *Wilmington Trust Company. v. Coulter,* Del.Ch., 208 A.2d 677, 682 (1965) (In ordinary adversary litigation a losing party is not assessed the counsel fees of his opponent unless the action was "fraudulent, etc."); *Weinberger v. UOP, Inc.,* Del.Ch., 517 A.2d 653, 656 (1986) ("To depart from the traditional rules with respect to attorneys' fees, there must be a showing of bad faith, conduct which was totally unjustified, or the like."); *Ableman v. Katz,* Del.Supr., 481 A.2d 1114, 1121 (1984) (Cost awards to successful parties are justified only when a "compelling special equity" is shown.).

Since the Family Court specifically disclaimed any finding of bad faith or fraudulent conduct on the part of the Division, the sole basis upon which the assessment of counsel fees might subsist is the Court's conclusion that the Division "greatly prolonged the period of time necessary to resolve the support dispute." This finding is questionable in view of the fact that the Superior Court appeal was at the behest of Smallwood, not the Division. Moreover, in using the agreement-consent order mecha-

nism to resolve its claim against Smallwood, the Division was adhering to a past practice which had received the tacit approval of the Family Court, and in this instance, the specific imprimatur of the Family Court judge who overruled Smallwood's deficiency of process objection. When so viewed the Division's conduct in pursuing its legal claim against Smallwood can hardly be deemed inequitable and clearly was not characterized by fraud or bad faith. The mere invocation by the Family Court of its inherited equitable authority does not permit the imposition of sanctions which lack precedential support.

We conclude, therefore, that the Family Court abused its discretion in assessing counsel fees against the Division in this case. Accordingly, the decision of the Family Court is REVERSED.